IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CHANDRA L. BERRY,                )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )          No. 18-cv-2721-SHL-dkv
                                 )
                                 )
SPECIALIZED LOAN SERVICING, LLC, )
BANK OF NEW YORK MELLON TRUST    )
COMPANY, and CORELOGIC CREDCO,   )
                                 )
          Defendant.             )

---

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO STRIKE
PORTIONS OF FREDERICK KORB'S DECLARATION AND OBJECTIONS
and
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

---

On August 27, 2018, the plaintiff, Chandra Berry ("Berry"),

commenced a *pro se* civil action in the Court of General Sessions

of Shelby, County, Tennessee against Specialized Loan Servicing,

LLC ("Specialized Loan"), Bank of New York Mellon Trust Company

("Bank of New York"), and Corelogic Credco, by filing a civil

warrant with a seven-page typed complaint and eight pages of

exhibits attached.[1]  On October 17, 2018, the defendants removed

---

[1] On August 27, 2018, Berry filed three separate cases in the
General Sessions Court of Shelby County, Tennessee against various
defendants for violation of the Fair Credit Reporting Act, 15
U.S.C. § 1681, *et seq.*, among other claims, all of which have been
removed to this court by the defendants.  (Case No. 18-2654-SHL-
dkv; Case No. 18-2689-SHL-dkv; Case No. 18-2721-SHL-dkv).  The

the action to this court, (Notice of Removal, ECF No. 1), and on November 7, 2018, the defendants filed answers to Berry's complaint, (Corelogic Credco Ans., ECF No. 11; Specialized Loan and Bank of New York Ans., ECF No. 12).[2]

Now before the court is the June 11, 2019 motion for summary judgment filed by Specialized Loan and Bank of New York (collectively, the "Defendants") (Mot. for Summ. J., ECF No. 51), along with the Declaration of Frederick Korb ("Korb"), in support of the motion for summary judgment, (Korb. Decl., ECF No. 52). Berry filed a response in opposition to the Defendants' motion for summary judgment on June 25, 2019, (Pl.'s Resp., ECF No. 61), along

---

court entered an order consolidating the cases for discovery and mediation on December 12, 2018. (Order, ECF No. 20.)

[2] On December 3, 2018, Berry filed a motion requesting leave to amend her complaint. (Pl.'s Mot. to Am. Compl., ECF No. 17.) The court held a status conference on December 12, 2018 to discuss consolidation of this case with two other cases filed by Berry for discovery, during which Berry's pending motion to amend her complaint was briefly discussed. This court granted Berry's motion for leave to file an amended complaint on December 19, 2018 and directed her to file and serve her amended complaint by December 26, 2018. (Order, ECF No. 21.) Berry failed to do so. On April 9, 2019, the court held another status conference. At the hearing, the court instructed Berry that she had until April 16, 2019 to renew her motion for leave to file the proposed amended complaint. Berry still failed to do so. On June 14, 2019, Berry filed a second motion for leave to amend her complaint, which included a second proposed amended complaint as an attachment. (Pl.'s Second Mot. to Am. Compl., ECF No. 56.) This court denied that motion, (Order, ECF No. 68), and Berry appealed, (Appeal, ECF No. 69). The presiding district judge affirmed this court's decision. (Order, ECF No. 86.) As such, the original General Sessions civil warrant and attached complaint remains the operative complaint in this case.

with her own affidavit and the affidavits of her sister, Karen Berry, and a work associate, Eldean Brown. (Affs. in Supp. of Pl.'s Resp.; ECF Nos 62-1, 62-2, & 62-3). The Defendants filed a reply on July 23, 2019, (Defs.' Reply, ECF No. 64).

Additionally, before the court is Berry's July 9, 2019 motion to strike portions of Korb's declaration, (Korb Decl., ECF No. 52). (Pl.'s Mot. to Strike, ECF No. 63.) The Defendants filed a response in opposition to the motion on July 23, 2019. (Defs.' Resp. to Mot. to Strike, ECF No. 66.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Ref., ECF No. 9.)

For the following reasons, it is recommended that Berry's motion to strike portions of Korb's declaration be denied but that her motion be treated as objections to portions of the Korb affidavit and that the objections be sustained in part and overruled in part. It is further recommended that the Defendants' motion for summary judgment be granted.

## I.    PROPOSED UNDISPUTED FACTS

This court finds that the following facts are undisputed for purposes of this motion for summary judgement:[3]

---

[3] The Defendants set forth twenty-five undisputed facts in their statement of undisputed facts. Berry disputes many of them and, in addition, sets forth thirty-two additional facts in her response to the summary judgment motion, many of which the

On August 5, 2004, Berry executed a mortgage loan with Mortgage Lenders Network, USA, Inc., secured by Berry's property at 6215 Malloch Drive, Memphis, Tennessee 38119 (the "Property"). (Defs.' Ex. A, ECF No. 51-2.)  On May 18, 2006, Berry executed a second mortgage loan with lender Citifinancial, Inc., which was also secured by the Property. (Defs.' Ex. B, ECF No. 51-3.)  Several days later on May 23, 2006, Berry entered into a Home Equity Line of Credit Agreement and Disclosure Statement (the "HELOC") with Corestar Financial Group, LLC for a loan with a credit limit of $22,000.00. (Defs.' Ex. C, ECF No. 51-4.)  As security, Berry also executed an Open-End Deed of Trust, secured by the Property, and recorded it on May 23, 2006. (Defs.' Ex. D, ECF No. 51-5.)

In August 2011, Berry filed for protection under Chapter Seven of the United States Bankruptcy Code, and on December 14, 2011, she received a discharge.[4] (Defs.' Ex. E, ECF No. 51-6; Defs.' Ex. G, ECF No. 51-8.)  During Berry's bankruptcy proceedings, America's Servicing Company, as a servicer for the Bank of New York,[5] moved the court for relief from the automatic stay

---

Defendants dispute.

[4] Berry filed four previous bankruptcy petitions under Chapter 13 between January 2007 and October 2010, all of which were dismissed. (Case No. 07-20169, Case No. 07-28551, Case No. 09-20361, and Case No. 10-31654, U.S. Bankruptcy Court, Western District of Tenn.)

[5] At some point in time, the Note and Deed of Trust for the first loan was made payable to JP Morgan Chase Bank. The Deed of Trust was then assigned to the Bank of New York as JP Morgan Chase

provisions of the bankruptcy code and to require the trustee to abandon interest in the Property. (Defs.' Ex. F, ECF No. 51-7.) The presiding bankruptcy judge granted the motion. (*Id.*) As such, the Property was no longer part of the bankruptcy estate and Bank of New York could "pursue all remedies, including initiating foreclosure proceedings, against the [Property]." (*Id.*)

As a result of Berry's default on the primary loan, Bank of New York requested that the Property be sold in a foreclosure sell.[6] (Defs.' Ex. H, ECF No. 51-9.) On May 8, 2015, Bank of New York purchased the Property at the auction from Wells Fargo Bank. (*Id.*) Subsequently, on or around July 31, 2017, service of the HELOC was transferred to Specialized Loan. (Defs.' Ex. I, ECF No. 51-10.) On August 21, 2017, Specialized Loan mailed two Notices of Servicing Transfer (collectively, the "Transfer Notices") to Berry: one dated August 14, 2017, (Defs.' Ex. I, ECF No. 51-10),

---

Bank's successor. (Defs.' Ex. F, ECF No. 51-7.) See *Bank of New York Mellon v. Berry*, 2018 WL 930967, at *1 (Tenn. Ct. App. 2018) for a clear and concise recitation of how Bank of New York gained interest in the first loan.

[6] Berry consistently argues, without support, that Bank of New York had no interest in the property to request the foreclosure. According to Berry, Bank of New York "was never in possession of and the true transferor of the Note and Deed of Trust. . . The Note [was not] freely transferable . . . .[T]he Note was [] endorsed to . . . JP Morgan Chase." (Pl.'s Resp. 2, ECF No. 61.) However, the record makes clear that Bank of New York was successor in interest to JP Morgan Chase Bank on the primary loan. *See supra* note 3 and accompanying text. Furthermore, Berry has already litigated her wrongful foreclosure action in the state court system. *Bank of New York Mellon*, 2018 WL 930967, at *1.

and one dated August 21, 2017, (Defs.' Ex. J, ECF No. 51-11), each bearing different account numbers. Both Transfer Notices contained the following statement:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> BANKRUPTCY NOTICE – IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

(Defs.' Ex. I, ECF No. 51-10; Defs.' Ex. J, ECF No. 51-11.)

On August 24, 2017, Specialized Loan sent Berry an informational letter known as a Verification of Debt ("VOD") informing her that there was a debt of $34,361.56 remaining on her HELOC which was comprised of the unpaid principal and the uncollected interest. (Defs.' Ex. K, ECF No. 51-12.) The VOD explained that Berry had thirty days after receipt of the letter to dispute the validity of the debt or it would be assumed to be valid. (*Id.*) Furthermore, it explained that if the debt was disputed, then Specialized Loan would obtain verification of the

debt or a copy of the judgment. (*Id.*) The VOD also contains the following language:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING
> TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE
> USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN
> A BANKRUPTCY PROCEEDING OR HAVE RECEIVED A BANKRUPTCY
> DISCHARGE OF THE HOME LOAN DEBT REFERENCED ABOVE, THIS
> NOTICE IS FOR INFORMATIONAL PURPOSES ONLY. IT SHOULD
> NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT AGAINST YOU
> PERSONALLY. . . .
>
> BANKRUPTCY NOTICE – IF YOU ARE A CUSTOMER IN BANKRUPTCY
> OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF
> THIS DEBT, PLEASE BE ADVISED THAT THIS NOTICE IS SENT TO
> COMPLY WITH THE REQUIREMENTS OF [the FDCPA]. THIS NOTICE
> CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF
> PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT
> HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE
> WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT
> TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES
> BANKRUPTCY CODE. HOWEVER, IT IS BEING SENT TO YOU AS
> THE LIEN AGAINST THE COLLATERAL PROPERTY HAS NOT BEEN
> DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS,
> PLEASE CONTACT US.

(*Id.*)

On September 8, 2017, Specialized Loan received a letter from Berry dated August 28, 2017, which disputed her debt and referenced the previous bankruptcy discharge from 2011. (Defs.' Ex. L, ECF No. 51-13.) In the letter, Berry stated that Bank of New York was "never assigned nor transferred title or any interest in the [HELOC] prior to the date of bankruptcy discharge through the present date." (*Id.*) Berry also stated that any attempt to collect a discharged debt would be a violation of the bankruptcy code. (*Id.*) In addition, Berry included a copy of the

grantee/grantor index for the Property. (*Id.*) The index confirms that Berry granted Mortgage Lenders Network, USA, Inc. an interest in the property in August 2004 and that Berry granted interests to Citifinancial, Inc. and Corestar Financial Group, LLC in 2006. (*Id.; see also* Defs.' Exs. A, B, & C, ECF Nos. 51-2 through 51-4.) Furthermore, the last entry demonstrates that Mortgage Lenders Network, USA, Inc. assigned its interest in the Property to Bank of New York. (Defs.' Ex. L, ECF No. 51-13.) This assignment was recorded as of December 30, 2011. (*Id.*)

On September 10, 2017 – two days after having received Berry's dispute – Specialized Loan sent Berry a letter explaining that it received her dispute letter and that her case was currently under review. (Defs.' Ex. M, ECF No. 51-14.) This letter contained a bankruptcy notice that explained that this was not a demand for payment or a notice of personal liability. (*Id.*) Subsequently on October 20, 2017, Specialized Loan prepared and sent a letter to Berry explaining that her dispute was still under review because additional research was required to ensure that her concerns were "being addressed." (Defs.' Ex. N, ECF No. 51-15.) This letter also contained the bankruptcy notice. (*Id.*)

On November 10, 2017, Specialized Loan sent Berry a letter which stated that it understood the account in question was included in a Chapter Seven bankruptcy that was discharged. (Defs.' Ex. O, ECF No. 51-16.) Again, this letter explicitly

indicated that "the information contained in this letter is for informational purposes only and is not an attempt to collect a debt or impose personal liability." (*Id.*) The letter also explained to Berry that her correspondence was redirected to the appropriate department for additional review. (*Id.*) On or around November 17, 2017, Specialized Loan ordered a copy of Berry's credit report as part of an internal review of her dispute. (Defs.' Ex. R, ECF No. 51-19.) Specialized Loan wrote off Berry's debt. (Korb Decl. ¶ 21, ECF No. 52.)

The record also contains a copy of Berry's denial from American Express. (Defs.' Ex. P, ECF No. 51-17.) Berry applied for a Premier Rewards Gold Card through American Express; however, her request was denied. (*Id.*) The reason cited by American Express's customer care department was Berry's FICO credit score obtained from Experian which showed that her FICO score was a 624. (*Id.*) American Express also cited the following: there is a derogatory public record or collections agency record, too many inquiries, ratio of loan balances to loan amounts was too high, and there was no recent information about credit card accounts. (*Id.*) Berry's Experian credit report as of June 22, 2018 showed her Chapter Seven bankruptcy, an account for $60,417 with Navient which is a student loan servicer, and ten inquiries. (Defs.' Ex. R, ECF No. 51-19.)

On August 27, 2018, Berry filed the present action. (Compl.,

ECF No. 1.)  On October 17, 2018, the Defendants removed the action to this court, (Notice of Removal, ECF No. 1), and on November 7, 2018, the Defendants filed answers to Berry's complaint (Corelogic Credco Ans., ECF No. 11; Specialized Loan and Bank of New York Ans., ECF No. 12).  In her General Sessions civil warrant and attached seven-page typed complaint, Berry alleges violations of the Fair Credit Reporting Act of 1970 (the "FCRA"), 15 U.S.C. § 1681, *et seq.*, violations of the Fair Debt Collections Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and state law claims of negligent and intentional misrepresentation.  Furthermore, Berry alleges that the Defendants' "improper conduct . . . resulted in . . . invasion of privacy, information inquiry, exposed [her] to an increased risk of identity theft, an increased risk of further invasion of privacy, and emotional distress" which the court construes as state law claims for negligent and intentional infliction of emotional distress.  (Compl. ¶ 32, ECF No. 1-1.)  In the General Sessions civil warrant and attached complaint, Berry seeks $1,000 in statutory damages, $25,000 in actual damages, punitive damages, reasonable attorney fees, and court costs.  (General Sessions Civil Warrant 1, ECF No. 1-1.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Motion to Strike Portions of Korb's Declaration

In support of their motion for summary judgment, the Defendants attached the declaration of Korb – a Senior Manager at

Specialized Loan.  (Korb Decl., ECF No. 52.)  Subsequently, on July 9, 2019, Berry filed a motion to strike portions of Korb's affidavit. (Mot. to Strike, ECF No. 63.).  Berry objects to eight paragraphs contained in Korb's twenty-one paragraph affidavit – Paragraphs 5, 9, 10, 11, 18, 19, 20, and 21.  (Mot. to Strike, ECF No. 63.)  The Defendants filed a response on July 23, 2019.  (Resp. to Mot. to Strike, ECF No. 66.)

The Defendants first ask this court to deny Berry's motion summarily because a motion to strike is not the proper method to defeat supporting documents attached to a motion for summary judgment.  (Resp. to Mot. to Strike 1, ECF No. 66.)  As a general rule, a motion to strike is not an authorized or proper way to defeat supporting documents which one party finds objectionable. 5A Wright and Miller, *Federal Practice and Procedure*: *Civil* 2d § 1380 (West 1990).  The only provision within the Federal Rules which provides for striking an item is Rule 12(f).  That rule authorizes the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Affidavits and/or attached exhibits accompanying memoranda in support of motions for summary judgment, or the memoranda themselves for that matter, however, are not among the documents identified as "pleadings" by the Federal Rules.  *See* Fed. R. Civ. P. 7(a).  Courts in this district have consistently held that a motion to strike is not the

proper procedural device for countering exhibits or affidavits attached to memoranda in support of motions. *See, e.g.*, *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, 2003 WL 21946595, at *5-6 (W.D. Tenn. July 28, 2003)(finding that a motion to strike was "not the proper procedural device" by which to object to exhibits offered to support a motion); *see also Moore v. Baptist Mem. Coll. of Health Scis.*, 2010 WL 100551, at *8 n.2 (W.D. Tenn. Jan. 7, 2010)(finding that a deposition transcript is not a pleading that is subject to a motion to strike as contemplated by Rule 12(f) of the Federal Rules of Civil Procedure); *Scott v. Dress Barn*, 2006 WL 870684, at *2 (W.D. Tenn. Mar. 31, 2006)(citations omitted)(refusing to strike an affidavit because it is not a pleading).

Courts presented with inadmissible evidence should disregard the evidence rather than striking it from the record. *Lombard v. MCI Telecom. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998)(citing *State Mut. Life Assur. Co. of Am. V. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979)). In order for a party to preserve its objection to a court's consideration of material which it believes to be inadmissible, "it is enough for the movant to make its objections known in a reply memorandum if one is permitted, in open court if a hearing is held, or otherwise." *Porter*, 2003 WL 21946595, at *6 (citing *Lombard*, 13 F. Supp. 2d at 625). The court therefore recommends that Berry's motion to strike be denied and

that the motion to strike be treated as Berry's objections to specific paragraphs in Korb's declaration.

Rule 56(c) governs the admissibility of statements contained in declarations used to support or oppose a motion for summary judgment. Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." Fed. R. Civ. P. 56(c)(4). Whenever the court receives accompanying affidavits with a memorandum either in support of or in opposition to a motion for summary judgment, it is required to evaluate the contents and determine whether the affidavits meet the relevant criteria under the Federal Rules of Civil Procedure. "A declaration or an affidavit offered in support of a motion for summary judgment must set forth specific facts (not conclusory statements) made on the basis of personal knowledge." *Enigwe v. Diversity City Media*, 2008 WL 11352583, at *2 (S.D. Ohio June 2, 2008); *see also Sears v. Jo-Ann Stores, Inc.*, 2014 WL 3672113, at *3 (M.D. Tenn. July 23, 2014)(citing *Petroleum Enchancer, LLC v. Woodward*, 690 F.3d 757, 772 (6th Cir. 2012); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir. 2002)(explaining that neither conclusory statements nor hearsay may be considered on a motion for summary judgment).

Berry objects to ¶ 5 on the basis that Korb lacks personal

13

knowledge and that the statement is hearsay and conclusory. (Mot. to Strike ¶ 4, ECF No. 63.) In ¶ 5, Korb states that "Berry never made a payment on her HELOC loan balance." (Korb. Decl. ¶ 5, ECF No. 52.) Personal knowledge may be found where it is "evident from the affidavit that the facts contained therein are based on personal knowledge." *Peirano v. Momentive Specialty Chemicals, Inc.*, 2012 WL 4959429, at *7 (S.D. Ohio Oct. 17, 2012)(citations omitted). Furthermore, "[a]lthough the affidavit, ideally, will expressly state the basis for the facts, in some instances, personal knowledge may be inferred from the content of the statements." *Id.* In his declaration, Korb expressly states his basis for personal knowledge - that he is employed as a Senior Manager at Specialized Loan, he is familiar with Specialized Loan's business records kept in the normal course of business, and that he is familiar with the facts described in the affidavit. (Korb's Decl. ¶ 2, ECF No. 52.) In addition, considering his position and employment with Specialized Loan, the court can infer that Korb has personal knowledge of the facts stated in his declaration. Nor is the statement hearsay. It is a statement of fact based on his review of the records.[7] Accordingly, it is recommended that Berry's objection to ¶ 5 be overruled.

---

[7] Interestingly, Berry states in her response to the motion for summary judgment that she never made payments on a HELOC loan serviced by Specialized Loan. (Pl.'s Resp. ¶ 19, ECF No. 61.)

Berry objects to ¶ 9 on the basis that she never had an account ending in -8976 with the Defendants. (Mot. to Strike ¶ 5, ECF No. 63.) This paragraph in Korb's declaration states in relevant part: "On or around August 21, 2017, [Specialized Loan] sent a Notice of Servicing Transfer regarding Berry's HELOC, with a reference to account ending -8976 []." (Korb's Decl. ¶ 9, ECF No. 52.) This statement in Korb's declaration is a statement of fact – the Notice of Servicing Transfer letter dated August 21, 2017 states that it is in regard to an account ending in -8976. (Defs.' Ex. J, ECF No. 51-11.) Berry is free to dispute this fact, and she does so in her response to the Defendants' motion for summary judgment. Accordingly, it is recommended that Berry's objection to ¶ 9 by overruled.

Berry objects to ¶ 10 and ¶ 11 on the basis that these statements "are conclusory and fail to fully and accurately explain the notices['] intent." (Mot. to Strike ¶ 6, ECF No. 63.) Paragraph 10 states: "The Transfer Notices informed Berry that [Specialized Loan] would take over servicing her HELOC." (Korb's Decl. ¶ 10, ECF No. 52.) The statement in ¶ 10 is a statement of fact and not merely a legal conclusion. The letters state that that servicing of an account had been transferred to Specialized Loan, effective July 31, 2017. (Defs.' Exs. I & J, ECF Nos. 51-10 & 51-11.) Accordingly, it is recommended that Berry's objection to ¶ 10 on the basis that it is conclusory be overruled.

15

Paragraph 11 states: "The Transfer Notices are not a demand for payment." (*Id.* at ¶ 11.)As to ¶ 11, the record reflects that the Transfer Notices both contain "IMPORTANT NOTICIES." (Defs.' Exs. I & J, ECF Nos. 51-10 & 51-11.)  As discussed above, those notices state the following:

> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> BANKRUPTCY NOTICE – IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY.   THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT.  WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT.  IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

(Defs.' Exs. I & J, ECF Nos. 51-10 & 51-11.)  Korb stated in his declaration that the Transfer Notices were not attempts to collect a debt.  (Korb's Decl. ¶ 11, ECF No. 52.)  Whether the communications between the defendant and the plaintiff constitute communications "in connection with the collection of any debt" under the FDCPA is a question that courts generally analyze.[8]  *See*

---

[8] As it is recommended that Berry's claims under the FDCPA be dismissed as being untimely under the FDCPA's one-year statute of

*Goodson v. Bank of America, N.A.*, 600 F. App'x 422, 430-33 (6th Cir. 2015)(considering similar letters to determine whether the letters' "animating purpose" was to collect a debt); *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014)(analyzing whether the purpose of the communications was to collect a debt); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)(analyzing language used in balance statements sent to the plaintiff to determine whether the purpose was to induce payment). Considering the language of the Transfer Notices and that courts must generally ask what the purpose of the communications are, Korb's statement in ¶ 11 is conclusory and therefore, it is recommended that Berry's objection to ¶ 11 be sustained.

Berry objects to ¶ 18 on the basis that the statement is conclusory and hearsay. (Mot. to Strike ¶ 7, ECF No. 63.) Paragraph 18 states: "[Specialized Loan] reviewed Berry's account and her disputed material. Following an internal review, [Specialized Loan] determined that Berry's HELOC was discharged." (Korb's Decl. ¶ 18, ECF No. 52.) This statement is a statement of fact based on Korb's personal knowledge and not merely a legal conclusion. Accordingly, it is recommended that Berry's objections to ¶ 18 be overruled.

---

limitations, *infra* Part II.D., the court does not analyze whether these letters constitute communications.

Berry objects to ¶ 19 on the basis that these statements are conclusory, hearsay, and based on opinion and belief. (Mot. to Strike ¶ 8, ECF No. 63.) Paragraph 19 of the declaration states: "As part of its internal review, SLS ordered a soft inquiry [] Berry's credit report to confirm Berry's dispute and confirm the status of the lien and Berry's bankruptcy. A soft inquiry of credit does not affect a credit score." (Korb's Decl. ¶ 19, ECF No. 52.) The first sentence is a statement of fact within Korb's personal knowledge. The second sentence, however, is opinion not based on any factual evidence or personal opinion. Accordingly, it is recommended that Berry's objections to the first sentence of ¶ 18 be overruled but that her objections to the second sentence be sustained.

Berry objects to ¶ 20 "because it is hearsay and contradicts what the records reveal and does not explain the regular business practices of [specialized Loan]." (Mot. to Strike ¶ 9, ECF No. 63.) Paragraph 20 of the declaration states: "[Specialized Loan] has not made any collection attempts on the HELOC." (Korb's Decl. ¶ 20, ECF No. 52.) For the reasons set forth above with respect to Korb's statement in ¶ 11, the statement in ¶ 20 is conclusory and therefore it is recommended that Berry's objection to ¶ 20 be sustained.

Berry objects to ¶ 21 on the basis that the statement is conclusory and hearsay. (Mot. to Strike ¶ 10, ECF No. 63.)

18

Paragraph 21 states: "[Specialized Loan] has internally written off Berry's HELOC." (Korb's Decl. ¶ 21, ECF No. 52.) This statement is a statement of fact based on Korb's personal knowledge and not merely a legal conclusion. Accordingly, it is recommended that Berry's objections to ¶ 21 be overruled.

B. <u>Summary Judgment Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cty. Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium). The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case. *LaPointe*, 8 F.3d at 378. This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.

1993); *see also LaPointe*, 8 F.3d at 378.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251-52).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378.  Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31

20

F.3d 375, 379 (6th Cir. 1994).

C.    Berry's FCRA Claims

The FCRA creates a private right of action to enforce many of its terms. *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012).

> Consumers may bring suit to recover actual damages, and potentially attorney's fees and costs, from "[a]ny person who is negligent in failing to comply with any requirement imposed ... with respect to any consumer" under the Act. 15 U.S.C. § 1681o. In addition, when a person "willfully fails to comply with any requirement imposed ... with respect to any consumer," that consumer may seek actual *or* statutory damages, as well as punitive damages and attorney's fees and costs. 15 U.S.C. § 1681n.

*Id.*

Berry alleges causes of actions for both willful and negligent violations of the FCRA.    Specifically, Berry alleges that on November 17, 2017, Specialized Loan acting on behalf of Bank of New York violated § 1681b(f) of the FCRA when it "disregarded Berry's dispute of the discharged debt and procured an unauthorized consumer report from Experian Credit Bureau without permission to do so;" when it obtained her report without a permissible purpose and under false pretenses "when the debt no longer existed as collectible" after the bankruptcy discharge in 2011 and of the subsequent foreclosure on the primary loan in 2015; and when it procured her report without first obtaining written authorization and without a "legitimate business need." (Compl. ¶¶ 17, 24, & 26, ECF No. 1-1.)

"The FCRA, 15 U.S.C. § 1681 *et seq.*, . . . is designed to protect consumers from inaccurate information in consumer reports by establishing credit reporting procedures which 'utilize correct, relevant and up-to-date information in a confidential and responsible manner.'" *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 843-44 (6th Cir. 2004)(quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "The FRCA imposes distinct obligations on three types of entities: (1) consumer reporting agencies[;] (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Id.* at 844 (citing *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999)). Berry purports to hold the Defendants liable as "users" of consumer reports.

Section 1681b(f) provides that a person "shall not use or obtain a consumer report for any purpose" unless: (1) "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section" and (2) "the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f). To establish her claim, Berry must show: "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *Id.* (internal quotation marks

and citations omitted).   In addition, Berry must show that the Defendants did so either negligently or willfully to impose civil liability.   *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008).

The Defendants do not dispute that there was a consumer report within the meaning of the statute or that they used or obtained it.   Section 1681b(a)(3) of the FCRA provides permissible purposes.[9]   The FCRA defines "permissible purpose" as:

> [A]ny consumer agency may furnish a consumer report under the following circumstances and no other:
> . . .
> (3) To a person which it has reason to believe –
> . . .
>      (F) otherwise has a legitimate business need for the information –
>           (i) in connection with a business transaction that is initiated by the consumer; or
>           (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b.   The Defendants state that their "permissible purpose" was to "confirm Berry's dispute and ensure the lien remains and is collectable in rem." (Mem. in Supp. of Summ. J. 16, ECF No. 51-1.)

Relying on *Boggio*, the Defendants first argue that Berry's

---

[9] Section 1681b(a)(3) regulates those who furnish consumer reports.   Several courts in the Sixth Circuit, however, have recognized that these permissible purposes apply to users of consumer reports as well.   *See, e.g.*, *Godby*, 599 F. Supp. 2d at 937 n.4; *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 815 n.2 (W.D. Ky. 2003).

private right of action under the FCRA arises only after a furnisher – who the Defendants claim to be – receives proper notice of a dispute from a consumer reporting agency ("CRA"). The Defendants argue that because there is no allegation or evidence that a CRA provided notice of a dispute to them, Berry cannot support her claim against them for violation of the FCRA.

The Defendants' assertion and reliance on *Boggio* is misplaced. In *Boggio*, the plaintiff's estranged wife purchased a car through financing she secured with the defendant. *Id.* at 613. When the plaintiff experienced credit problems linked to his ex-wife's failure to pay the car loan, the plaintiff wrote to the CRAs and to the defendant directly to dispute his status as a co-obligor. *Id.* The defendant reported back to each CRA that plaintiff was a co-obligor. *Id.* The plaintiff then brought suit against the defendant under § 1681s-2 of the FCRA. *Id.* at 614. As part of his claim under the FCRA, the Sixth Circuit in *Boggio* required the plaintiff to show that the defendant-furnisher first received a dispute from a CRA. *Id.* at 615.

*Boggio* is both factually dissimilar to Berry's case and alleges violations under a separate provision of the FCRA than what Berry alleges here. Berry is not alleging that the Defendants "furnished" incorrect information to a CRA like the plaintiff in *Boggio*. Instead, Berry is alleging that the Defendants sought and obtained her consumer report from a CRA without a permissible

24

purpose in violation of § 1681b of the FCRA.  There is no such requirement for purposes of an improper use claim under § 1681b of the FCRA.  *See, e.g.*, *Bickley*, 751 F.3d at 728; *Sheridan v. AFNI, Inc.*, 2015 WL 506573, at *2 (M.D. Tenn. Feb. 5, 2015); *Bowling v. Scott Lowery Law Office, P.C.*, 2014 WL 3942280, at *2 (W.D. Ky. Aug. 12, 2014); *Godby*, 599 F. Supp. 2d at 938.

The Defendants also argue that they do not have to proffer a "permissible purpose" because they already had Berry's prior authorization by operation of the HELOC agreement.  (*Id.*)  The HELOC agreement states in relevant part, that "[Berry] authorize[s] Holder, at Holder's expense, to make or have made credit inquiries, and [Berry] authorize[s] any person to whom the Holder makes such inquiries to furnish Holder with the requested information."  (Defs.' Ex. C ¶ 10, ECF No. 51-4.)  It is clear that Berry gave prior authorization, by virtue of her signing the HELOC agreement, to any Holder of that interest to "make or have made credit inquiries" and no time limit was specified in the agreement.  As such, because Berry had already given prior authorization for the Holder of the HELOC to access her credit in relation to the agreement, Berry's assertions that she had no account or that Bank of New York did not have an interest because Bank of New York had wrongfully foreclosed early are insufficient.  *See Levine v. World Fin. Network Nat'l. Bank*, 437 F.3d 1118 (11th Cir. 2006)(noting that the FCRA does not explicitly state whether

25

an account review under section 1681b(a)(3)(f) includes the review of accounts that have been paid in full and closed).

The Defendants also assert that, to the extent Berry's complaint pleads state law claims arising out of the same conduct for which she alleges violations of the FCRA, those claims are preempted. "[T]he FCRA preempts both state statutory and state common law claims." *See, e.g.*, *Scott v. First Southern Nat'l Bank*, 936 F.3d 509, 521 (6th Cir. 2019). As such, to the extent that any of Berry's allegations attempt to assert a state law claim for conduct in violation of the FCRA, those claims are preempted.

Accordingly, it is recommended that the Defendants' motion for summary judgment be granted as to Berry's FCRA claims.

D.  <u>Berry's FDCPA Claims</u>

Berry alleges that the Defendants violated multiple provisions of the FDCPA when Specialized Loan sent Berry the two Transfer Notices and the VOD - 15 U.S.C. §§ 1692e, 1692f, 1692g(a)(3), and 1692k. Specifically, Berry contends that Specialized Loan made false representations regarding the character and the amount of the debt, engaged in coercive tactics and threats, and attempted to use deceptive means to collect the alleged debt in violation of 15 U.S.C. § 1692e and § 1692f and the Defendants violated § 1692g by failing to send a thirty day right-to-dispute notice within five days of the initial communication. (Compl. ¶¶ 11, 12, ECF No. 1-1.) The Defendants assert the

26

statute of limitations bars all Berry's claims under the FDCPA. (*Id.* at 10.)  Berry did not address the statute of limitations in her response.  (Pl.'s Resp. 12-14, ECF No. 61.)

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e.  When collecting a debt, a debt collector may not: "harass, oppress, or abuse any person," 15 U.S.C. § 1692d; use any "false, deceptive, or misleading representation or means in connection with the collection of a debt," 15 U.S.C. § 1692e; or "use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

Among the enumerated illegal practices are: "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;" continuing to communicate with a consumer following a written request to stop communication subject to certain exceptions; falsely representing "the character, amount, or legal status of any debt;" "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed;" and collecting any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *See* 15 U.S.C. §§ 1692c-1692f.  The prohibitions of the FDCPA cover debts

which arise out of transactions primarily for personal, family, or household purposes.  *See* 15 U.S.C. § 1692a(5).

To be held liable under the FDCPA, a defendant must be a "debt collector" within its meaning.  A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  A creditor, on the other hand, is "any person who offers or extends credit creating a debt or to whom a creditor is owed."  15 U.S.C. § 1692a(4).  It is well-settled that a "creditor is not a debt collector purposes of FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *MacDermid v. Discover Fin. Serv.*, 488 F.3d 721, 735 (6th Cir. 2007)(quoting *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)).  Mortgage servicing companies, however, "may or may not be subject to the FDCPA, depending upon the status of the debt at the time the assignment is made." *See Tann v. Chase Home Finance, L.L.C.*, 2011 WL 3799841, at *6 (E.D. Mich. Aug. 26, 2011)(citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)(holding a mortgage servicing is not a debt collector as long as the debt was not in default at the time it was assigned)).  A determination of the statuses of the Defendants is unnecessary as Berry's claims

28

under the FDCPA are barred by the statute of limitations.

Section 1692k(d) of the FDCPA provides: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). All of Berry's allegations under the FDCPA stem from the three letters sent to her in August 2017. The two Transfer Notices are dated August 14, 2017 and August 21, 2017, and the VOD is dated August 24, 2017. (Defs.' Exs. I, J & K, ECF Nos. 51-10, 51-11 & 51-12.) "Courts apply a 'bright-line-rule' approach in determining when the statute of limitations accrues [as to letters which allegedly violate the FDCPA]. Instead of running from the date of receipt, the statute runs from the mailing date, as it is 'fixed by objective and visible standards and easy to determine.'" *Munoz v. Rushmore Mgmt. Loan Servs. LLC*, 2017 WL 5629645, at *5 (S.D. Ohio Nov. 22, 2017)(citing *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 464 (6th Cir. 2013)(quoting *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992)); *see also Goodson v. Bank of America, N.A.*, 2014 WL 940492, at *1 (M.D. Tenn. Mar. 10, 2014), *aff'd*, 600 F. App'x 422 (6th Cir. 2015)(considering the Sixth Circuit's adoption of a "bright line rule approach" in other similar cases and ultimately determining that the statute of limitations for the FDCPA begins to run the

date the letter is mailed).  The statute of limitations for Berry's
FDCPA claims expired, at the latest, on August 24, 2018, one year
from the date the last letter was mailed.

Berry filed her General Sessions Civil Warrant and complaint
on October 22, 2018.  Over a month after the statute of limitations
had passed.  As stated above, Berry failed to respond to this
argument in her response and provided the court with no facts to
suggest that any equitable defense should toll the statute of
limitations.  Accordingly, it is recommended that the Defendants'
motion for summary judgment as to Berry's FDCPA claims be granted.

E.    Negligent and Intentional Misrepresentation

Berry also alleges causes of action for negligent and
intentional misrepresentation in her complaint. To the extent
those claims are not preempted, it is recommended that the
Defendants' motion for summary judgment be granted because Berry
cannot demonstrate she relied on any misrepresentation.

Under Tennessee law, to state a claim for negligent
misrepresentation, the plaintiff must prove that the defendant
acted "in the course of his business, profession or employment, or
in a transaction in which he has a pecuniary [] interest;" that
the defendant supplied "faulty information meant to guide others
in their business transaction;" that the defendant failed to
"exercise reasonable care in obtaining or communicating the
information;" and that the plaintiff justifiably relied on the

information provided. *Regions Bank v. Lost Cove Cabins & Campgrounds, Inc.*, 2010 WL 4514957, at *7 (Tenn. Ct. of App. Nov. 9, 2010)(citing *Ritter v. Customer Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995)). To state a claim for intentional misrepresentation under Tennessee law, the plaintiff must show that (1) "the defendant made a representation of a present or past fact;" (2) "the representation was false when it was made;" (3) "the representation involved a material fact;" (4) "the defendant either knew that the representation was false or did not belief it to be true or that the defendant made the representation recklessly;" (5) that "the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation;" and (6) that "the plaintiff sustained damages." *Hodge v. Craig*, 382 S.W.2d 325, 342-43 (Tenn. 2012)(citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)). Under either theory, the plaintiff must prove that he or she "reasonably relied upon the representation to [his or her] detriment." *Riddle v. Lowe's Home Centers, Inc.*, 802 F. Supp. 2d 900, 907-08 (M.D. Tenn. 2011)(citing *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2006) and *Hill v. John Banks Buick*, 875 S.W.2d 667 (Tenn. Ct. App. 1993)).

Berry makes no factual allegations that she relied on any of these alleged misrepresentations. The first transfer notice letter contained an incorrect account number prompting the

Defendants to send the second transfer notice letter with the correct account number on it, but Berry does not allege that she relied on the incorrect account number or the allegedly incorrect balance amount. No misrepresentations were made to Berry in order for the Defendants to obtain Berry's consumer report and Berry does not allege she relied on any such misrepresentations.

"Justifiable reliance is a necessary element in a cause of action based upon [] misrepresentation . . . until the justifiable reliance element is established, there is no negligent misrepresentation." *Riddle*, 802 F. Supp. 2d at 907 (M.D. Tenn. 2011)(applying Tennessee law and discussing both negligent and intentional misrepresentation). Because there is no genuine dispute of material fact as to whether Berry can establish the elements of her misrepresentation claims, it is recommended that the Defendants' motion for summary judgment be granted as to Berry's misrepresentation claims.

F.    <u>Negligent and Intentional Infliction of Emotional Distress</u>

Berry's complaint can also be interpreted as alleging state law causes of action for negligent and intentional infliction of emotional distress. (Compl. ¶¶ 31–33, ECF No. 1-1.) Specifically, Berry states that the Defendants' behavior "impose[ed] upon [her] significant distrust, frustration, and distress" and "emotional distress." (*Id.*) The Defendants' argue that Berry fails to establish essential elements of her claims for emotional distress,

32

whether negligently or intentionally. (Mem. in Supp. of Summ. J. 17-20, ECF No. 51-1.) To the extent these claims are not preempted, it is recommended that the Defendants' motion for summary judgment be granted.

In her twenty-six paragraph affidavit,[10] Berry states that because she spent an "enormous amount of time disputing a discharged debt" she has been subject to "humiliation and embarrassment, worry, and emotional distress because of the Defendants constant pursuit and unlawful attempt to collect a time-barred, discharged debt." (Berry Aff. ¶ 26, ECF No. 62-1.) Berry also states that the "events imposed frustration and distress on [her] during that time where the simplest tasks (i.e., cooking, grocery shopping, etc.) could not be completed without experiencing episodes of stress and anxiety, periods of nervousness, sleeplessness, and a loss of appetite, all of which affected [her] quality of life and work performance." (*Id.*) According to Berry, she was "forced to seek urgent care on [November 19, 2018] for stress-related symptoms due to the events surrounding the subject of this lawsuit." (*Id.*)

Karen Berry, the sister of Berry, attempts to bolster Berry's allegations. In her eight-paragraph affidavit, Karen Berry makes

---

[10] In their Response to Berry's Additional Material Facts, the Defendants object to ¶¶ 3, 4, 10, 11, 12, 13, 14, 23, 24, and 25 as conclusory and outside Berry's personal knowledge. Their objections are sustained and those paragraphs are disregarded.

statements such as "[Berry] became extremely upset after receiving documents of a loan that had been included in her Chapter 7 bankruptcy," (Karen Berry Aff. ¶ 4 , ECF No. 62-2), "[Berry] became even more frustrated after learning about the outcome of the company's results from her dispute," (*id.* at ¶ 5), "[Berry] was even more humiliated after reviewing her credit report," (*id.* at ¶ 6), "[Berry] went to urgent care for stress," (*id.* at ¶ 7), and "[Berry] was mentally exhausted from the challenges of having to dispute the debt, getting approved for credit and a residence, and her personal information being disclosed, (*id.* at ¶ 8 )." In her affidavit, Eldean Brown, a work associate of Berry, states that "Berry was out of the office for personal reasons from June 25, 2018 through August 3, 2018," (Eldean Brown Aff. ¶ 4, ECF No. 62-3), and that "Berry did not come into the office on November 19, 2018 and November 20, 2018 after going to urgent care," (*id.* at ¶ 5). In their reply, the Defendants object that Karen Berry's and Eldean Brown's affidavits contain hearsay which does not fall into any exception and is therefore not admissible and may not be used in support of Berry's response. The objections are sustained. These statements are based on what Berry told the affiants not on their personal knowledge and constitute impermissible hearsay. These affidavits will be disregarded. Regardless, even if the affidavits were considered, Berry has failed to present evidence of an essential element of her emotional distress claims or create

a genuine dispute of material fact as to an essential element of her emotional distress claims.

In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege "'the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation,' and that 'the defendant's conduct caused serious or severe emotional injury.'" *DeSoto v. Bd. of Parks & Recreation*, 64 F. Supp. 3d 1070, 1095 (M.D. Tenn. 2014)(quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012)). A severe emotional injury occurs when "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rogers*, 367 S.W.3d at 208.

Berry has failed to allege a severe emotional injury or show a genuine dispute of material fact as to whether she suffered "severe emotional injury" for purposes of her negligent infliction of emotional distress claim. Considering the allegations in her complaint and the statements contained in her affidavit, Berry fails to show that she suffered emotional injury to the level required under Tennessee law. Berry's allegations that she was stressed, humiliated, and had to go to urgent care for anxiety related issues do not demonstrate that the Defendants' conduct caused "severe emotional injury." *See Love-Sawyer v. Equifax, Inc.*, 2009 WL 3169679, at *4 (M.D. Tenn. Sept. 28, 2009)(explaining

35

that "[a]s a general matter, a claim of negligent infliction of emotional distress will lie where a plaintiff has suffered emotional injuries as a result of the death or injury of a third person" and dismissing the plaintiff's claims in relation to finding inaccurate information on her credit report). Additionally, although Berry makes conclusory allegations that she suffered emotionally and that this anxiety caused her difficulty in her daily life, Berry fails to allege circumstances where "a reasonable person would be unable to cope with mental stress." *See Simpson v. American Credit Acceptance, LLC*, 2017 WL 1968284, at *5 (E.D. Tenn. May 11, 2017)(explaining that a plaintiff alleging she suffered "extreme mental anguish when the Defendant wrongfully repossessed her car and wrongfully listed on her credit report that the car was repossessed" was insufficient for a negligent infliction of emotional distress claim).

Furthermore, under Tennessee law, a plaintiff who asserts a claim for negligent infliction of emotional distress "must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence." *See French v. Specialized Loan Servicing, LLC*, 2016 WL 2930938, at *4 (E.D. Tenn. May 19, 2016)(citing *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)(finding that where the plaintiffs "have not presented any medical or scientific evidence to establish the existence of a serious or a severe emotional injury," summary

36

judgement was appropriate); *see also Ramsey v. Beavers*, 931 S.W.2d 527, 531-32 (Tenn. 1996).   To date, Berry has failed to provide any type of expert medical or scientific evidence as to her emotional injury, and the time for doing so has passed. (Am. Scheduling Order, ECF No. 50.) Because Berry has failed to do so, there is no genuine dispute as to material fact regarding her negligent infliction of emotional distress claim, and it is recommended that summary judgment be granted.

In order to state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must establish that: the defendant acted with intent or recklessness; the defendant's conduct was "so outrageous that it cannot be tolerated by civilized society;" and the defendant's conduct "resulted in serious mental injury to the plaintiff." *Lourcey*, 146 S.W.3d at 51 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); *accord DeSoto*, 64 F. Supp. 3d at 1095.   To meet the second required element, it is not sufficient for a plaintiff to establish that a defendant "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Lourcey*, 146 S.W.3d at 51.   Rather a plaintiff must show that the defendant's conduct was:

> so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the

37

community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966), abrogated on other grounds by *Camper v. Minor*, 915 S.W.2d 437, 444-46 (Tenn. 1996)(quotation omitted).  A plaintiff must also show that the "outrageous" conduct of the defendant also caused emotional distress "so severe that no reasonable [person] could be expected to endure it." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004).  "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Jenkins v. Nashville Public Radio*, No. 3:02-CV-0179, 2005 WL 3358871, at *4 (M.D. Tenn. Dec. 9, 2005)(citations and internal quotation marks omitted).

As to Berry's intentional infliction of emotional distress claim, Berry fails to create a genuine dispute of material fact as to whether the Defendants' conduct was "so outrageous that it cannot be tolerated by civilized society;" and the defendant's conduct "resulted in serious mental injury to the plaintiff." *Lourcey*, 146 S.W.3d at 51.  Berry has not alleged sufficient facts to demonstrate that that the Defendants' conduct – mailing her three letters, engaging in correspondence with her, and stating that she had a balance on her HELOC – was so egregious as to rise to the level required. *See Daee v. JPMorgan Chase Bank, N.A.*,

38

2016 WL 7742807, at *7 (M.D. Tenn. May 18, 2016)(explaining that the methods used by Chase to collect – unwanted phone calls, unwanted letters, entering the property, and posting notices of foreclosure – did not amount to conduct so outrageous as to not be tolerated by a civil society); *French*, 2016 WL 2930938, at *4 (explaining that the loan servicer sending a "Notice of Default and Intent to Foreclose" and other communications to plaintiffs and the plaintiffs' generalized and conclusory allegations of suffering from anxiety were insufficient to establish an intentional infliction of emotional distress claim). It is therefore recommended that the Defendants' motion for summary judgment be granted as to Berry's claims for intentional infliction of emotional distress as well.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Berry's motion to strike portions of Korb's declaration be denied but that her motion be treated as objections to portions of the Korb affidavit and that the objections be sustained in part and overruled in part. Additionally, it is recommended that the Defendants' motion for summary judgment be granted.

Respectfully submitted this 17th day of March, 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.